## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-14274-CIV-MARTINEZ/MAYNARD

**LAWRENCE F. CURTIN,**

      **Plaintiff,**

**v.**

**KIMBERLY CORTEZ, in her official role as
Assistant State Attorney,**

      **Defendant.**

_____/

### REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DE 3), MOTIONS FOR INJUNCTIVE RELIEF (DE 7 & 9) AND COMPLAINT (DE 1)

**THIS CAUSE** comes before this Court upon Orders of Reference (DE 5) and the above

Motions. Having reviewed the Motions and without awaiting the Defendant's appearance in this

case, this Court recommends as follows:

### BACKGROUND

1.  This Court draws the background to this lawsuit from the Plaintiff's various

filings to-date. This Court bases the present background section on the background section from

the Report and Recommendation at DE 71 in Curtin v. Wentz, et al., 18-14417-CIV-

MARTINEZ/MAYNARD, adding to it new information that the Plaintiff pleads in the present

case. This Court provides the below updated background for general context purposes only,

without making any findings of fact.

2.  The underlying event is the motor vehicle accident on September 7, 2012. The

Plaintiff says that he was driving on I-95 when a truck entered the interstate highway from an

adjacent construction site. The Plaintiff swerved to avoid colliding with the work truck, but in

doing so he crashed his vehicle into an obstacle. He claims debilitating physical injury as a result[1]. The Plaintiff further alleges that the accident and resulting injuries also interfered with a business opportunity that he says he was developing at the time. At page 3 of DE 1—2 in this case, the Plaintiff proffers a letter from the University of Nevada that confirms that he and his wife had toured its campus and a gold quarry mine in August 2012. However that letter does not confirm his assertion that he had developed a way to use radio waves (as an alternative to cyanide) to separate gold from slag.

      3.      In October 2013 the Plaintiff filed in state court a civil complaint against the truck owner and others to recover for his personal injuries from the underlying car accident. See Curtin v. State Farm Mutual Auto. Ins. Co., Ranger Construction Industries, Inc., and Bob's Barricades, Inc., Case No. 2013 CA 1809 (Fla. 19th Judicial Circuit). St. Lucie County Circuit Judge Janet Croom presided over that case. That case ended on April 12, 2016 when Judge Croom entered summary judgment in the defendants' favor. (Judge Croom's Order is found in the record at pages 19—20 of DE 39 in Case No. 18-14417-CIV-MARTINEZ/MAYNARD.) That case since has been concluded at the appellate level, with all appeal opportunities exhausted. See Curtin v. Ranger Constr. Indus. Inc., 2018 WL 5761224 (Fla. Nov. 2, 2018) (dismissing appeal), Curtin v. Ranger Constr. Indus. Inc., 2018 WL 4181688 (Fla. Aug. 29, 2018) (transferring a petition for writ of prohibition), and Curtin v. Ranger Constr. Indus., Inc., 2017 WL 2535171 (Fla. June 12, 2017) (dismissing appeal). In addition to appealing up through the state's appellate courts, the Plaintiff filed two lawsuits in this federal court related to that state court personal injury lawsuit.

---

[1] At page 21 of DE 39 in Case No. 18-14417-CIV-MARTINEZ/MAYNARD the record contains an Incident Report from that wreck, and at page 34 thereof a treatment note of a heart attack that happened while he was in the hospital.

They are Curtin v. Travelers Property Causality Corp., 17-14403-CIV-ROSENBERG and Curtin v. Ranger Construction Industries, Inc., 16-14427-CIV-ROSENBERG. Both of those cases since have been closed.

4.      The Plaintiff also wrote Governor Scott to complain about Judge Croom. Governor Scott informed him of the option of filing a complaint with the Judicial Qualification Committee ("JQC"). Thereupon the Plaintiff began writing letters to the JQC. After receiving no response to his letters, the Plaintiff also wrote the Florida Senate's Judiciary Committee.

5.      The Plaintiff proffers one of his JQC letters at page 2 of DE 1—2 in this case. In that letter, dated April 23, 2018, the Plaintiff complained that Judge Croom's ruling in the defendants' favor amounted to a denial of his constitutional rights. He complained about the serious injury that he and his wife suffered as the result of the underlying car accident. He cited Biblical law principle of an "eye for an eye", the need for punishment to fit the crime, and his own sworn obligation to enforce the constitution and "to stop Croom." Presumably it was that letter that the JQC regarded as threatening towards Judge Croom. The JQC forwarded it to the Chief Judge of the 19th Judicial Circuit, and the Chief Judge in turn forwarded it to the St. Lucie County Sheriff's Office. Sergeant Colangelo instructed Detective Wentz to investigate the possible threat.

6.      On June 29, 2018 Detectives Wentz and Cannon went to the Plaintiff's house to interview him. The Plaintiff consented to the interview, and the detectives taped it. (Their Investigation Report begins at page 4 of DE 51—1 in Case No. 18-14417-CIV-MARTINEZ/MAYNARD.)

7.      Their investigation led the detectives to suspect that the Plaintiff had threatened Judge Croom in violation of § 836.12(2), Fla. Stat. With their supervisor's approval, the

detectives applied for an arrest warrant. Assistant State Attorney Cortez also approved it and forwarded it to Judge Eisenhower. After he reviewed it, Judge Eisenhower then issued the arrest warrant. (The arrest warrant is attached to Defendant Wentz' Motion to Dismiss that was filed at DE 70—1 in Case No. 18-14417-CIV-MARTINEZ/MAYNARD.)

8.      In addition to applying for the arrest warrant, law enforcement petitioned for a Risk Protection Order pursuant to § 790.402, Fla. Stat., for the protection of Judge Croom. The St. Lucie County Sheriff's Office was the Petitioner, and its general counsel, Adam Fetterman, Esq., represented it in that proceeding. The case of <u>St. Lucie County Sheriff's Office v. Curtin</u>, Case No. 2018 MH 416 (19th Judicial Circuit) was opened. Judge Belanger presided. On July 5, 2018 Judge Belanger entered an ex parte temporary risk protection order.

9.      On July 9, 2018 law enforcement arrested the Plaintiff on Judge Eisenhower's warrant. The Plaintiff was released from jail twelve hours after his arrest, Defendant Wentz reports at page 8 of DE 47 in Case No. 18-14417-CIV-MARTINEZ/MAYNARD.

10.     On July 16, 2018 Judge Belanger held a hearing on the Sheriff's request for a Final Risk Protection Order. The court heard testimony from Detective Wentz and the Plaintiff. The transcript begins at page 3 of DE 44 in Case No. 18-14417-CIV-MARTINEZ/MAYNARD. Judge Belanger granted the Petition. In his Final Order, which begins at page 4 of DE 48—1 in Case No. 18-14417-CIV-MARTINEZ/MAYNARD, the judge found clear and convincing evidence that the Plaintiff posed a significant danger of causing personal injury to himself or to others.

11.     One of the terms of that Final Risk Protection Order was a mental health evaluation. Presumably that is the mental health evaluation that was done on July 31, 2018 which

the Plaintiff proffers at pages 28—32 at DE 39 in Case No. 18-14417-CIV-

MARTINEZ/MAYNARD.

12. On July 24, 2018 the State of Florida filed an Information against the Plaintiff,

thereby commencing the criminal case of <u>Florida v. Curtin</u>, Case No. 2018 MM 1668A. County

Judge Philip Yacucci later took over as the presiding judge. The Plaintiff proffers that

Information at page 3 of DE 1—2 in this case. As the Plaintiff reports at DE 7 filed in this case,

that criminal case remains open and pending. Indeed the present civil Complaint rests in part on

the Plaintiff's grievance over being held on house arrest for over a year now, with no trial set and

no way to seek relief on appeal on a pro se basis. Perceiving no right to appeal in state court or to

otherwise obtain a remedy in state court for the resulting alleged violation of his due process

rights, he comes to federal court to ask for relief.

13. On October 11, 2018 the Plaintiff filed in this federal court the complaint that

began the prior Case No. 18-14417-CIV-MARTINEZ/MAYNARD. There the Plaintiff sued

Detective Wentz (the officer who investigated the reported threats against Judge Croom and who

applied for the arrest warrant), the St. Lucie County Sheriff's Office, and the JQC. He later

expanded the scope of that § 1983 lawsuit to include several of those involved in the state

criminal and risk protection cases including ASA Kimberly Cortez whom he names as the

Defendant here in the instant lawsuit.

14. Around the same time when he filed his complaint that began Case No. 18-14417-

CIV-MARTINEZ/MAYNARD, the Plaintiff filed two additional federal lawsuits. The first,

<u>Curtin v. Judge Croom, et al.</u>, 18-14437-CIV-ROSENBERG, concerned the underlying motor

vehicle accident. It since has been closed. <u>See</u> <u>Curtin v. Croom</u>, 2019 WL 760598 (S.D.Fla. Feb.

20, 2019). The second, <u>Curtin v. Florida State Attorney</u>, 18-14441-CIV-ROSENBERG/WHITE,

concerned the criminal prosecution. It also was closed pursuant to <u>Younger</u> Abstention which bars a federal court from interfering in a state pending criminal case.

15.    Assistant Public Defendant Whitney Duteau was appointed to represent the Plaintiff in the criminal case. On November 2, 2018 she asked the court for a competency evaluation. The Plaintiff proffers that motion at page 5 of DE 1—2 in this case. The Plaintiff criticizes his defense attorney for taking that action, and he complains about the transfer of the case from criminal to mental health court. He had appealed that transfer, but his appeal was denied.

16.    In his Complaint filed in this case, the Plaintiff objects to the various psychological evaluations that the state court has ordered to-date. Judge Belanger ordered one on July 31, 2018 which Dr. Galloway conducted. The Plaintiff says that Dr. Galloway conducted another one on March 29, 2019.

17.    At DE 7 in this case the Plaintiff proffers the first page of a court-ordered psychological report dated January 18, 2019. In that report Dr. Zaky opines that the Plaintiff is incompetent to proceed to trial on the criminal charge due to unspecified mental illness and neurocognitive deficits. Dr. Zaky found the Plaintiff to have an insufficient mental capacity to appreciate the possible penalties he is facing, to understand the nature of the legal process, and to testify relevantly. As for the likelihood of restoring competency, Dr. Zaky gave a poor prognosis given the Plaintiff's poor insight into his mental health and neurological issues and his resistance to treatment.

18.     Beginning at page 9 of DE 1—2 in this case, the Plaintiff proffers a Psychiatric Evaluation dated July 9, 2019 and written by Dr. Jourdan[2] at New Horizons of the Treasure Coast, Inc. The Plaintiff told Dr. Jourdan that he was there for a court-ordered evaluation, but he had brought no such paperwork with him, the doctor noted. The Plaintiff denied any history of mental health problems or treatment. The Plaintiff denied any current mental health problems or symptoms. The mental status examination was normal. Dr. Jourdan concluded the report by finding "no evidence of any acute psychiatric illness", and he sent the Plaintiff back home without making a follow-up appointment.

19.     In the instant Complaint the Plaintiff sues Assistant State Attorney Kimberly Cortez under 42 U.S.C. § 1983 for malicious prosecution. Although he had named her as a defendant in his prior § 1983 lawsuit in Case No. 18-14417-CIV-MARTINEZ/MAYNARD, he asserts the ability to bring this lawsuit against her in this case. He may do so, he argues, because this Court did not formally dismiss her from that prior lawsuit; he had voluntarily dropped her as defendant from that prior lawsuit, instead. At DE 9 the Plaintiff also argues against giving ASA Cortez the benefit of prosecutorial immunity.

20.     He raises several different objections to how Ms. Cortez prosecuted the criminal case. He objects to the Pretrial Supervision Order that was rendered in his criminal case on October 29, 2018 (which the Plaintiff proffers at page 4 of DE 1—2 in this case) that enjoined him from communicating with or about Judge Croom. He complains that Ms. Cortez failed to use her authority to lift that infringement placed on his First Amendment constitutional rights. He objects to his arrest, pre-trial house arrest, and criminal prosecution as lacking probable cause

---

[2] The signature to that evaluation reads "Jourdan", but the Plaintiff refers to this doctor as Jean Paul Baptiste.

and thereby violating his Fourth Amendment rights. The Plaintiff complains that the repeat court-ordered psychological evaluations have deprived him of his Sixth Amendment right to a speedy trial.

21.     He faults Judge Croom for allowing Ranger Construction to continue to operate road construction sites in a negligent fashion, which allowed two subsequent traffic fatalities, he contends. He asserts his innocence to the charge of threatening a judge. Rather than recognize his effort to bring those dangers to light, the Plaintiff complains that the state has used every effort to cast him as mentally ill. He complains that the state took advantage of his work on radio frequencies, work which he says could benefit mankind in different ways.

22.     The Plaintiff complains that ASA Cortez continues to prosecute the criminal case against him despite knowing how the resulting stress worsens his heart condition. "In other words", as the Plaintiff frames it at page 11 of his Complaint at DE 1, the ongoing prosecution constitutes "state murder by proxy." He says that this is not the first time when state prosecutors attempted to murder him. That prior attempt stems from a child support case that the state had brought against him in the 1980's despite his prominence in Florida's then Democratic party leadership, he alleges. His efforts to defend himself in state and federal courts against that proceeding resulted in an attempt to assassinate him, he says.

23.     Through the instant lawsuit the Plaintiff seeks injunctive and declaratory relief to correct state court determinations with which he disagrees. He asks that state court determinations of mental illness be declared false. He asks for a determination that his constitutional rights have been violated over the course of the civil and criminal litigation in Florida state court. He asks for permission to communicate with the news media (thereby lifting the bar to such activities found in the Pretrial Supervision Order). He asks that the tracking

device that he wears for house arrest be removed from his ankle: he complains that he cannot drive his wife to work and back with that "leg iron" on. The Plaintiff also seeks damages---$40 million---as compensation for the baseless legal proceedings against him.

24.     Through the Motions for Injunctive Relief (DE 7 and 9) and his Notice of Fifth Amendment Violation (DE 8), he expands the scope of his grievances. He seeks reversal of the state mental health court judge's decision (1) not to let him represent himself and (2) to send him back to Dr. Zaky for another psychological evaluation (done at Defendant ASA Cortez' urging). The Plaintiff objects that his ongoing pre-trial house arrest (which continues while he remains incompetent to proceed to trial presumably) violates his constitutional right to a speedy trial. He also complains that ASA Cortez has kept the criminal charge from being dismissed by manipulating others into making false claims. The Plaintiff asks this Court to enjoin ASA Cortez to dismiss the criminal charges currently pending against him.

25.     In his Notice (DE 8) the Plaintiff complains that having to undergo the renewed psychological evaluation with Dr. Zaky will infringe on his Fifth Amendment right not to be required "to speak to anyone in a criminal case". The state court is compelling his participation in that evaluation under the threat of contempt sanction. He does not want to speak to Dr. Zaky because in the Report and Recommendation dated May 16, 2019 and docketed at DE 71 in the case of Curtin v. Wentz, et al., 18-14417-CIV-MARTINEZ/MAYNARD the undersigned U.S. Magistrate Judge had warned him not to speak about the criminal charges---that is, not to say anything that can be held against him in the criminal proceeding. Presumably the Plaintiff refers to ¶21 thereof where this Court cited the Plaintiff's Fifth Amendment right against self-incrimination as an additional, practical reason for why this federal court should abstain from

taking any action that might interfere with the state criminal court proceeding. This Court

expressed concern over how:

> [t]he Plaintiff's simultaneous pursuit of the instant civil § 1983 claims risks
> undermining his defense against the criminal charge, for example, by hindering
> his Fifth Amendment right against self-incrimination. He should decide how to
> best present his defense within the context of the state criminal court case and
> without risk of taking an inconsistent position in this case.

It should go without saying that the above comment was limited to the context of that abstention

discussion. This Court did not make that comment in the context of a competency evaluation

with a mental health professional or with respect to other facets of the criminal case, itself.

## STANDARD OF REVIEW

26.     Pursuant to 28 U.S.C. § 1915(e)(2)(B), this Court first must review the underlying

Complaint to determine whether this lawsuit is frivolous, fails to state a claim for which relief

may be granted, or seeks damages from a defendant who is immune from being sued. See

Martinez v. Kristi Kleaners, Inc., 364 F.3d 1305, 1307 (11th Cir. 2004) (citing Watson v. Ault,

525 F.2d 886 (5th Cir. 1976)) and Coggins v. Tallapoosa County Dept. of Revenue, 2009 WL

1738034, *2 (M.D.Ala. 2009) (citing Procup v. Strickland, 760 F.2d 1107 (11th Cir. 1985)). To

carry out that prescreen review, this Court considers the Complaint under two standards[3]. First

there is Rule 12(b)(6), Fed.R.Civ.P., which tests whether the Plaintiff states a cognizable claim

for relief. For purposes of the Rule 12(b)(6) analysis, this Court assumes as true all of the

Plaintiff's well-pleaded factual averments and construes all inferences reasonably drawn

therefrom in his favor. Rule 12(b)(6) requires this Court to determine whether, on the basis of

---

[3] Judge Rosenberg previously explained to the Plaintiff these same Rule 12 standards in the
Order of Dismissal that she rendered in Case No. 16-14427-CIV on October 21, 2016 (and found
at DE 8 in that case). In that Order Judge Rosenberg also explained the pleading standards of
Rule 8 and the prescreening standard of 28 U.S.C. § 1915(e).

that fact background, the Plaintiff pleads a sufficient predicate to state a plausible claim for relief. That is, a plausible violation of law by which to hold the Defendant liable. Therefore a claim may be subject to dismissal if the Plaintiff can prove no set of facts to support the claim or if there is a legal bar precluding relief, see, e.g., Powell v. Barrett, 496 F.3d 1288, 1304 (11th Cir. 2007) (explaining that "[a] complaint is subject to dismissal under Rule 12(b)(6) when the allegations in the complaint, on their face, show that an affirmative defense bars recovery on the claim"). Second there is Rule 12(b)(1), Fed.R.Civ.P., which tests federal subject matter jurisdiction.

27.     This Court addresses next the scope of review. For general background and clarity purposes, this Court refers to the documents that the Plaintiff has proffered to-date both in the present lawsuit and in its previous iteration in Case No. 18-14417-CIV-MARTINEZ/MAYNARD. Not only are they documents that the Plaintiff discusses and are material to his claim, but some of them are documents of which this Court also may take judicial notice, having been generated in the course of legal proceedings. Moreover those documents control if they conflict with what the Plaintiff pleads. See Hill v. Fed. Home Loan Mortg. Corp., 2016 WL 916824, *2 (S.D.Fla. 2016). See also Beepot v. J.P.Morgan Chase Nat'l Corporate Servs., Inc., 2011 WL 4529604, n.7 (M.D.Fla. 2011) and Frame v. U.S., 2010 WL 5951969, *4-5 (M.D.Fla. 2010) (detailing the standard by which a court may take judicial notice of public records when considering a motion to dismiss). See also, Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1076, n.9 (11th Cir. 2013). The Rule 12(b)(6) and Rule 12(b)(1) analyses in this case both draw from the same underlying fact background.

## DISCUSSION

28.     The primary legal bar that precludes the Plaintiff's ability to litigate this lawsuit is

the absolute immunity that protects the Defendant. See Hendrickson v. Cervone, 2015 WL

925517 (N.D.Fla. 2015) (generally describing the immunity that criminal prosecutors have). The

Plaintiff brings this lawsuit against Kimberly Cortez, the assistant state attorney who has been

prosecuting the criminal investigation and criminal charges against the Plaintiff. The Plaintiff

sues her for her role in the criminal prosecution and more recently in her role in the competency

proceeding related to that criminal case. The Plaintiff frames his grievances against her in terms

of malicious prosecution and constitutional rights violations. The absolute immunity obviates

any need to consider whether the Plaintiff pleads the elements of malicious prosecution, false

arrest, or any of his other claims of wrongdoing, however. It likewise bars consideration of the

Plaintiff's objections to how the Defendant has and continues to-date to prosecute the criminal

case.

29.     At DE 9 the Plaintiff argues against giving ASA Cortez the benefit of

prosecutorial immunity. He argues that she loses its benefit because her sole purpose in filing the

criminal charges was to stop him from exercising his First Amendment right to speak freely

"about the crimes of Janet Croom". It was the governor who had directed him to file his

complaints with the Judicial Qualification Commission, he points out. The Plaintiff holds ASA

Cortez responsible for the ongoing psychological evaluations for which he sees no legitimate

basis. "Through her self serving and malicious actions" as well as through her sole goal of

violating his First Amendment rights, ASA Cortez "has stripped herself of prosecutorial

immunity", the Plaintiff argues. This Court finds the Plaintiff's arguments unavailing to lift the

absolute immunity protection that Ms. Cortez has against this lawsuit.

30.     Absolute immunity alone warrants dismissal of this lawsuit. However, even if it were excluded from consideration, other legal bars and principles warrant dismissal, too. The principle of Younger Abstention bars this Court from interfering in the criminal case which remains open and pending in Florida state court. See Watson v. Fla. Judicial Qualifications Comm'n, 618 Fed.Appx. 487, 489—90 (11th Cir. 2015) and Hudson v. Hubbard, 358 Fed.Appx. 116 (11th Cir. 2009) (discussing the Younger Abstention standard). The Plaintiff's various grievances boil down to an assertion of innocence. The Plaintiff argues that the various state actors and state court judges are wrong to construe his comments about Judge Croom as unlawfully threatening. If he feels he is innocent of the misdemeanor charge, then he should raise those arguments and defenses within the context of that criminal case for the state criminal court to address. The same goes for any violations of his constitutional rights that he feels he has suffered within the context of the criminal litigation. He should raise them in the state criminal case, too. The application of Younger Abstention means that this Court lacks the jurisdiction to hear them.

31.     Other related principles of abstention and comity also preclude this Court's ability to reverse rulings that the state court rendered against him in his underlying civil negligence lawsuit. This Court addressed those principles at ¶19 of its Report and Recommendation dated January 28, 2019 and docketed at DE 60 in Case No. 18-14417-CIV-MARTINEZ/MAYNARD.

32.     Dismissal should be without leave to amend. The above analysis shows that this lawsuit suffers from fundamental defects that amendment cannot cure. See generally, Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (stating the rule that leave to amend need not be given if it would not cure the pleading defect or otherwise would be futile).

33.     As a final matter, this Court notes the discretion that it has to restrict a litigant's access to federal court to stop that litigant's abusive or vexatious conduct "from unnecessarily encroaching on the judicial machinery needed by others". See Brewer v. U.S., 614 Fed.Appx. 426, 427 (11th Cir. 2015). Judge Rosenberg also informed him of that risk should he be found to be an abusive or vexatious litigant. See Curtin v. Croom, 2019 WL 760598, *3 (S.D.Fla. 2019). In her Order Dismissing Plaintiff's Complaint rendered on April 10, 2018 and docketed at DE 31 in the case of Curtin v. Travelers Property Casualty Corp., 17-14403-CIV-ROSENBERG/MAYNARD, Judge Rosenberg explained to the Plaintiff how the pursuit of frivolous or vexatious litigation also can subject a litigant to Rule 11 sanctions. This Court refrains from deciding whether the Plaintiff's future access to this federal court should be restricted. However this Court does emphasize to the Plaintiff the potential of being sanctioned or of having court access restricted should he be found to have brought frivolous or vexatious litigation. As this Court already has explained to the Plaintiff in its prior rulings, a federal court (1) is a court of limited jurisdiction and (2) can provide relief only for cognizable claims for relief. This Court strongly advises the Plaintiff to engage the services of an attorney-at-law to represent him in any future litigation.

34.     This Court now turns to the Plaintiff's in forma pauperis Application. This Court need not determine whether the Plaintiff is entitled to proceed on an in forma pauperis basis. His Application is moot because he lacks a cognizable claim for relief on which to proceed.

## CONCLUSION

35.     For the reasons this Court explains below, this Court finds that various legal principles compel the dismissal of the present lawsuit. This Court finds that the Plaintiff fails to state a claim on which relief may be granted and seeks relief from a defendant who is immune

from lawsuit. For those reasons this Court also finds the present lawsuit to be frivolous in the sense that legal principles bar it from continuing further. Consequently all three reasons for dismissal under § 1915(e)(B)(i—iii) are met here.

**ACCORDINGLY**, this Court recommends to the District Court that the Plaintiff's Application to Proceed in District Court without Prepaying Fees or Costs (DE 3) be **DENIED** as moot. This Court recommends that the Plaintiff's motions for injunctive relief (DE 7 and 9) be **DENIED**. This Court recommends lastly that the Plaintiff's Complaint (DE 1) be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B). Given the nature of the defects and the futility of amending it to correct them, this Court recommends that the Complaint be dismissed with prejudice and without leave to amend. Cf. Silva v. Bieluch, 351 F.3d 1045, 1048—49 (11th Cir. 2003).

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case. Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 749—50 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 12th day of September, 2019.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

CC:     Lawrence F. Curtin, pro se
        1731 Avalon Ave.
        Fort Pierce, FL  34949